## ELLIS v. HOUSTON & T. C. RY. CO.

(Court of Civil Appeals of Texas. Ft. Worth. April 20, 1918.)

1. EMINENT DOMAIN ⊕═191(1) — CONDEMNATION PROCEEDINGS—PLEADING.

A petition to condemn land for use of a railroad company, alleging that the complainant herein desires to condemn said land and property for the purposes of constructing thereon its railway lines and tracks, depots, both freight and passenger, station buildings, machine shops, repair shops, side tracks, and connecting lines and tracks with other railway tracks, and for switches, turntables, toolhouses, reservoirs, for water supply, water tanks, and for additional terminal facilities of every kind and character, and for other lawful purposes necessary and incident to the building, operating, and maintaining of its said railroad and carrying out the purposes of its said corporation, is sufficient under Vernon's Sayles' Ann. Civ. St. 1914, art. 6506, prescribing the allegations which must be made, and authorizing condemnation proceedings in county court if the owner and company are unable to agree on damages; the right to condemn land for the purposes mentioned being given by article 6504.

2. COURTS ⊕═21—JURISDICTION IN GENERAL.

Allegations of jurisdictional facts relating to the subject-matter of the suit, contained in a petition, of themselves, confer jurisdiction to determine the controversy presented, and such jurisdiction will be retained by the court until the defendant alleges and proves that allegations were made for the fraudulent purpose of conferring jurisdiction.

3. EMINENT DOMAIN ⊕═172—CONDEMNATION PROCEEDINGS—JURISDICTION.

Filing of application containing allegations of all facts necessary to confer upon the county court jurisdiction to determine the issues involved in the proposed condemnation immediately fixed jurisdiction.

4. EMINENT DOMAIN ⊕═273 — RESTRAINING CONDEMNATION PROCEEDING.

Since by Vernon's Sayles' Ann. Civ. St. 1914, arts. 6481–6534, the county court has exclusive original jurisdiction in condemnation proceedings, the district court will not, on the ground that the county court has no jurisdiction because the parties have not failed to agree as to damages as required by article 6506, and that the land is not subject to condemnation, enjoin condemnation proceedings after the county court has acquired jurisdiction by the filing of a sufficient petition, especially where plaintiff can be adequately compensated by damages, and the proof is ample to support a finding that the parties had been unable to agree as to damages.

**5. EMINENT DOMAIN ⊚═273 — ENJOINING CONDEMNATION PROCEEDINGS.**

Condemnation proceeding in a county court will not be enjoined on the ground that the property is not subject to condemnation, since it must be presumed that if the property is not subject to condemnation the county court will so find.

**6. INJUNCTION ⊚═7—RESTRAINING ACTION— ERRONEOUS DECISION—REMEDY.**

Plaintiff's remedy for an erroneous decision of the county court is by appeal, and not by suit to enjoin proceedings.

**7. EMINENT DOMAIN ⊚═300 — IRREPARABLE INJURY—EVIDENCE.**

In suit to enjoin condemnation proceeding in county court, evidence *held* insufficient to show that plaintiff could not be adequately compensated by damages for temporary use of property if it was finally adjudged that right to condemn did not exist in view of Vernon's Sayles' Ann. Civ. St. 1914, arts. 6518–6530, as to taking into consideration, not only the right of way, but also the adjacent property in estimating damages for temporary possession and use of right of way.

**8. EMINENT DOMAIN ⊚═274(1) — CONDEMNATION PROCEEDINGS—ENJOINING POSSESSION.**

A showing that commissioners would be unable to assess damages adequate to compensate plaintiff for injury to his property by proposed condemnation was a necessary predicate for restraint of possession by defendant railway company.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Suit by James M. Ellis against the Houston & Texas Central Railway Company. Relief denied, and plaintiff appeals. Affirmed.

McCart, Curtis & McCart, of Ft. Worth, for appellant. Thompson, Barwise & Wharton and A. J. Baskin, all of Ft. Worth, for appellee.

DUNKLIN, J. The Houston & Texas Central Railway Company filed with the county judge of Tarrant county a petition in writing seeking to condemn for the uses of the company a strip of land of 12.48 acres running across a part of a larger tract situated in said county and owned by James M. Ellis, a resident citizen of that county. That petition contained the following allegations:

"That the complainant herein desires to condemn said land and property for the purposes of constructing thereon its railway lines and tracks, depots, both freight and passenger, station buildings, machine shops, repair shops, side tracks, and connecting lines and tracks with other railway tracks, and for switches, turntables, toolhouses, reservoirs, for water supply, water tanks, and for additional terminal facilities of every kind and character, and for other lawful purposes necessary and incident to the building, operating, and maintaining of its said railroad and carrying out the purposes of its said corporation."

[1] The right of a railway company to condemn land for those uses is given by article 6504, V. S. Tex. Sts., hereinafter quoted. By article 6506 of the Statutes the company was authorized to institute condemnation proceedings in the county court by filing with the county judge of the county a petition

for such condemnation, if the company and the owner of the property were unable to agree upon the resulting damages. That article also prescribes the allegations which must be made in such a petition. The petition so filed by the company contained the specific allegation of inability of the parties to agree on the amount of such damages, also all other allegations required by that statute. Upon the filing of that petition the county judge appointed three disinterested freeholders of the county as special commissioners to assess the damages which the owner of the land might sustain by reason of such condemnation. The commissioners, after being duly sworn as required by article 6509, appointed a day and place for the purpose of determining the amount of such damages, and at the same time issued notices to the parties interested, notifying them of the time and place so selected for such hearing, which notices were duly served, all in compliance with article 6509 to 6513, inclusive, of the Statutes.

Before the date set for such hearing, J. M. Ellis instituted this suit in the district court of Tarrant county to enjoin the commissioners from proceeding with said hearing to assess damages and also against the railway company to enjoin it from taking any further steps seeking to condemn said property for the purposes sought. Upon the filing of that petition the district judge ordered the issuance of notices and service thereof upon the commissioners and railway company commanding them to appear before him at a time fixed in the order, then and there to show cause why the temporary writ of injunction prayed for in the petition should not be issued. Later the petition was heard and considered together with evidence introduced by all the parties, and upon such hearing plaintiff's application for the writ was refused. From that order Ellis has appealed.

The grounds upon which Ellis based his prayer for relief may be briefly stated as follows:

First. That the county court had not acquired jurisdiction to assess such damages and decree the condemnation proposed in view of the fact that the railway company and Ellis had not failed to agree upon the damages which might occur by reason of the taking of the strip of land sought to be condemned; the contention being made that in the absence of such inability of the parties to agree upon the damages the county court could not acquire such jurisdiction, in view of the provisions of article 6506 of our Statutes.

Second. That prior to the filing of said application for condemnation of the property in controversy Ellis had dedicated the strip sought and the land adjacent thereto

as a cemetery for use by the public for cemetery purposes and to be known as the Southside Cemetery; that he had platted said land into burial lots and blocks, streets, and passways and that said plat had been duly filed for record in the deed records of Tarrant county. Plaintiff further alleged that after filing said plat he proceeded to improve said property for cemetery purposes, and that bodies of deceased persons had been interred in some of the lots shown in said plat, one of which bodies was buried on the particular strip of land sought to be condemned in a lot which plaintiff had conveyed by regular deed of conveyance. It was further alleged that to use the strip of land sought to be condemned for the purposes alleged in the petition for condemnation will entirely destroy and render useless all the property so dedicated for cemetery purposes. He further alleged, in substance, that by reason of such prior dedication of the property as a cemetery it was not subject to condemnation, and for that additional reason the county court had no jurisdiction of the proposed condemnation proceedings.

Article 6504 is as follows:

"If any railroad corporation shall at any time be unable to agree with the owner for the purchase of any real estate, or the material thereon, required for the purposes of its incorporation or the transaction of its business for its depots, station buildings, machine and repair shops, for the construction of reservoirs for the water supply, or for the right of way, or for new right of way for change or relocation of roadbed to shorten the line, or any part thereof or to reduce its grades, or any of them, which is hereby authorized and permitted, or for any other lawful purpose connected with or necessary to the building, operating, or running its road, such corporation may acquire such property in the manner provided in this chapter; provided, that the limitation in width prescribed in article 6484, shall not apply to real estate, or any interest therein, required for the purposes herein mentioned, other than right of way, and that real estate, or any interest therein, to be acquired for such other purposes or any of them need not adjoin or abut on the right of way; provided, further, that no change of the line through any city or town, or which will result in the abandonment of any station or depot, shall be made, except upon written order of the railroad commission of Texas, authorizing such change; and provided, further, that no railroad corporation shall have the right under this act to condemn any land for the purposes mentioned in this article situated more than two miles from the right of way of such railroad corporation."

Other articles of chapter 8, title 115, of our Statutes, contain provisions for the assessment by the commissioners of damages caused by the condemnation proposed, for a return to the county court of a report of such assessment, and articles 6527 to 6530, inclusive, prescribe the proceedings to be followed by the county court for the rendition of a final judgment of condemnation, including the determination of any opposition by the owner of the land to the decision of the commissioners, and article 6527 contains the specific provision that such a controver-

sy "shall be tried and determined as in other civil causes in said court." By article 6530 it is provided that after the commissioners have assessed the damages, and before the rendition of a final judgment by the county court, the plaintiff in the condemnation suit shall have the right to take possession of the property sought to be condemned by depositing in court the amount of damages assessed by the commissioners and by giving bond in a like amount to secure any additional damages that may be finally adjudged against such plaintiff. Subdivision 3 of that article is as follows:

"Should it be determined on final decision of the case that the right to condemn the property in question does not exist, the plaintiff shall surrender possession thereof, if he has taken possession pending litigation, and the court shall so adjudge and order a writ of possession for the property in favor of the defendant, and the court may also inquire what damages, if any, have been suffered by the defendant by reason of the temporary possession of the plaintiff, and order the same paid out of the award or other money deposited; provided, that in any case where the award paid the defendant or appropriated by him exceeds the value of the property as determined by the final judgment, the court shall adjudge the excess to be returned to the plaintiff. If the cause should be appealed from the decision of the county court, the appeal shall be governed by the same law as in other cases; except the judgment of the county court shall not be suspended thereby. The rules hereinbefore laid down for governing railroad corporations shall likewise apply to all persons and corporations having the right of eminent domain."

As noted already the strip in controversy is a part of the land described in the plat of dedication. Appellant contends that the proof shows further and conclusively that there had been no failure of himself and the railway company to agree on the amount of his damages. He insists that the proof also shows, as alleged in his petition, that, unless restrained from so doing, the railway company will, as authorized by article 6530, take possession of the strip of land desired as soon as the commissioners shall have made the assessment of damages, and will immediately proceed to subject it to the uses desired, and that the work that will be done and the improvements that will be constructed to accomplish such purposes will result in irreparable injury to the plaintiff, the public, and owners of other lots in the tract dedicated for cemetery purposes, for which adequate compensation cannot be awarded. He insists that an injunction will be necessary to prevent such irreparable injury by restraining, in advance, the statutory proceedings which, if followed, will lead to the infliction of such an injury.

[2] It is insisted that, as the county court has no jurisdiction of the condemnation proceedings for each of the two reasons alleged and noted above, the proposed condemnation, if effected, will be null and void, and hence the district court has jurisdiction to enjoin the same in advance. Appellant has cited G.,

C. & S. F. Ry. v. F. W. & R. G. Ry., 86 Tex. 537, 26 S. W. 54, to support the proposition that the enforcement of a judgment of condemnation of land which is absolutely void may be enjoined by the district court. The same can be said of any other character of judgment. A judgment of the county court condemning property for uses by the railway company has no such special features as would distinguish it from other judgments, so far as that question may be involved. It is well settled that allegations of jurisdictional facts relating to the subject-matter of the suit, contained in a petition, of themselves, confer jurisdiction to determine the controversy presented, and that such jurisdiction will be retained by the court until the defendant alleges and proves that those allegations were made for the fraudulent purpose of conferring jurisdiction. Hoffman v. C. B. & L. Ass'n, 85 Tex. 409, 22 S. W. 154,

[3] As the application filed by the railroad company in the county court contained allegations of all facts necessary to confer upon the county court jurisdiction to determine the issues involved in the proposed condemnation, the filing of the application immediately fixed jurisdiction. Furthermore, the good faith of those allegations was not attacked by Ellis, either by pleading or by proof.

[4] Appellant's contention that the proposed proceedings in the county court will be void for lack of jurisdictional facts, and that the district court had the right to determine in advance of the county court those jurisdictional issues, is predicated upon the assumption that the court of equity can restrain the exercise of a clear unconditional right to condemnation proceedings in another court expressly conferred by statutes the constitutionality of which is not even challenged, and we think it too clear for argument that a court of equity has no such power. As the county court acquired jurisdiction to determine the controversy, and as it had exclusive original jurisdiction to try and determine it, that court's jurisdiction so to do could not be ousted by the district court. Furthermore, the proof introduced was ample to support a finding that prior to the institution of condemnation proceedings the railway company, through its representative, had attempted to reach an agreement with Ellis as to the damages he would sustain by reason of the condemnation proposed, but that the parties had been unable to reach an agreement upon that issue.

[5, 6] The proof showed also that only two lots shown on the plat of dedication had been conveyed, both of which were donated to H. F. Spellman, an undertaker, who had buried two bodies therein, apparently of indigents; that those lots were conveyed at appellant's instance for the purpose of starting the use of the platted land for cemetery purposes; that appellant himself had select-ed the two lots to be so used, one of which was within the boundaries of the proposed railway right of way and the other in close proximity thereto; that such selections were made after the railway company had made a preliminary survey of the right of way and had marked the same within stakes; and that the entire ground platted and dedicated by appellant for a cemetery, with the exception of those two lots, is still owned by him individually, and not by a cemetery corporation. If under such a showing it can be said that the property sought to be condemned is not subject to condemnation it must be presumed that the county court will so decide. It cannot be presumed that its decision will be incorrect. In any event, appellant's remedy for an erroneous decision by that court will be by appeal to a higher court in which is vested the power to correct the error.

[7] If after the commissioners have made their report of damages assessed by them, and before the rendition of a judgment by the county court of the issues involved in the condemnation proceedings, the railway company takes possession of the strip of land in controversy and subjects it to the uses proposed, as it will have the right to do under the terms and conditions prescribed in article 6530, and if it shall be finally adjudged that the right to condemn the property does not exist, and the railway company is required to surrender possession of the property so taken and to pay damages for such temporary taking, according to the provisions of subdivision 3 of that article, yet we are unable to perceive any reasonable basis for the contention that appellant cannot be adequately compensated in damages for such temporary possession and use of the right of way by the railway company; since in estimating such damages injury, not only to the right of way, but also to the property adjacent thereto, can properly be considered. Articles 6518 to 6530, inclusive. It is quite apparent that appellant's entire interest in the property dedicated is a mere financial interest in the profits he expects to realize from the sale of proposed burial lots, and he shows no legal right to complain of any irreparable injury of which the public or the relatives of the two persons buried might possibly complain, if indeed they could have a valid claim for equitable relief in the nature of that sought by appellant. He is the grantor, and not in any sense a grantee in the proposed dedication. With the exception of the two lots in which the bodies of the two indigents were buried, appellant owns all the lots platted, and is suing in his own right and not for the use and benefit of the public or as its lawful representative. No cemetery corporation to take over the property has been chartered, and it is not owned by any such a corporation.

[8] Appellant cites C., B. & Q. Ry. v. C., Ft. M. & D. M. Ry., 91 Iowa, 16, 58 N. W.

918, M. P. T. Ry. v. Field, 76 Ark. 239, 88 S. W. 897, and other decisions in support of his contention that, as the railway company will have the right to take charge of and subject to its uses the proposed right of way as soon as the damages have been assessed by the commissioners and before the county court can determine the issues whether or not the railway company has the right to condemn the property, an injunction will lie at all events to restrain such taking of possession until that issue is so determined. While as noted above it was alleged in effect that the railway company, if not restrained by a writ of injunction, will take possession of and improve the proposed right of way as soon as the commissioners shall have assessed the damages, and that by reason thereof plaintiff will suffer irreparable injury to his property, and while the petition contains a prayer for general relief, yet the principal purpose of the suit was to enjoin the entire proceedings, including any assessment of damages by the commissioners, and there was no prayer in the alternative for restraint of possession by the railway company in the event the commissioners were not enjoined from assessing the damages. In any event, a necessary predicate to such alternative relief would be showing that the commissioners will be unable to assess damages that will be adequate compensation for the injury to plaintiff's property by the proposed condemnation, and he has pointed out no such proof. On the contrary, to say the least, the facts were amply sufficient to support a finding by the trial court adverse to that contention.

For the reasons indicated the judgment of the trial court is affirmed.

The foregoing is filed as a substitute for our original opinion in the case likewise affirming the judgment of the trial court, but which is withdrawn; the foregoing being filed to meet some criticisms of expressions used in the former opinion which were not necessary to the main conclusion reached and which we have taken this method to eliminate. And the motion for rehearing is overruled.